**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TIMOTHY MICHAEL EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. CIV-19-407-JFH-KEW |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Timothy Michael Edwards (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 55 years old at the time of the decision. He has a limited education and past relevant work as an armored car guard and driver, extruder operator, and welder fitter. Claimant alleges an inability to work beginning on March 9, 2016, due to limitations resulting from problems with vision, widespread pain of the upper and lower extremities and neck and back, headaches, and hand or finger numbness.

## Procedural History

On August 30, 2016, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon

3

reconsideration. On January 4, 2019, ALJ Lantz McClain conducted a hearing from Tulsa, Oklahoma, at which Claimant testified. On January 19, 2019, the ALJ entered a partially unfavorable decision. Claimant requested review by the Appeals Council, and on September 30, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations prior to December 17, 2018.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error because (1) the RFC is legally flawed and not supported by substantial evidence; and (2) the ALJ failed to properly evaluate the opinion evidence, specifically the medical opinions of Coy Peters, D.O., and Mary Rolison, Ph.D.

**RFC Assessment**

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes, hypertension, obesity, obstructive sleep apnea, degenerative disc disease, and major depressive disorder. (Tr. 18). He determined that prior to December 17, 2018, Claimant

could perform light work with additional limitations. Claimant could lift or carry, push or pull twenty pounds occasionally and ten pounds frequently; stand/walk at least six hours in an eight-hour workday; and sit for at least six hours in an eight-hour workday. He was further limited to simple, repetitive tasks with only occasional interaction with supervisors, co-workers, and the public. (Tr. 21).

After consultation with a vocational expert ("VE"), the ALJ determined that prior to December 17, 2018, Claimant could perform the representative jobs of production assembler and produce sorter, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 26). As a result, the ALJ concluded Claimant was not under a disability prior to December 17, 2018, but he became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date. (Tr. 27).

Claimant raises several arguments for why the ALJ's RFC determination is not supported by substantial evidence. He alleges: (1) the ALJ failed to discuss evidence undermining his finding of Claimant's capacity for continuous standing and/or walking; (2) the ALJ disregarded Claimant's subjective statements regarding his capacity for standing and/or walking, which was inconsistent with the ALJ's determination that Claimant's statements were "reasonably consistent" with the medical and other

5

evidence in the record; and (3) the ALJ failed to properly consider Claimant's daily activities in the RFC assessment.

Claimant first argues he is unable to perform the standing and walking requirements of light work, citing to evidence from the record he contends the ALJ did not properly consider, including 2014 findings of pitting edema and stocking hypoesthesia in the lower extremities, lost protective feet sensation and slow ambulation, and painful peripheral neuropathy. He maintains the ALJ's failure to discuss such evidence reflects a less than adequate consideration of the evidence.

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, an ALJ is not required to discuss all of the evidence in the record. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

The ALJ summarized the evidence in detail. Claimant contends he failed to discuss certain records from 2014, but these records were prior to Claimant's alleged onset of disability date of March

6

9, 2016. Moreover, the ALJ discussed records from a physical examination of Claimant in June of 2018, which showed Claimant had a sensory deficit in the feet with stocking hypoesthesia. (Tr. 23, 421). He also discussed examination findings from consultative physician Harold Zane DeLaughter, D.O., from April 11, 2017, which found Claimant had decreased sensation to the bilateral hands and feet, positive straight leg raising in the sitting and supine positions, and that he ambulated with a stable but antalgic gait with decreased speed but with no use of an assistive device. Range of motion in all joints was normal, and although he reported lumbar pain, Claimant's had a full range of motion of the spine. (Tr. 23, 316-21).

The ALJ further discussed Claimant's evaluation for diabetes and diabetic neuropathy from January of 2018 by Steve Landgarten, M.D., specifically referencing physical findings of atrophic skin changes and onychomycosis, vibratory and fine touch were intact, and pulses were palpable bilaterally, though "perhaps" slightly diminished. (Tr. 23, 450). Dr. Landgarten noted Claimant suffered from painful peripheral neuropathy, but he also stated that Claimant was prescribed Lyrica twice daily to help with the discomfort of neuropathy, and Claimant reported he was only taking it once daily. Dr. Landgarten recommended Claimant take the medication as prescribed and that Claimant undergo EMG/nerve conduction studies. He concluded Claimant's diabetes was well-

controlled on oral medication. (Tr. 450). The ALJ noted Claimant's noncompliance with taking the medication for his neuropathy in the decision. (Tr. 23, 25). The ALJ's decision demonstrates that he discussed the evidence raised by Claimant in the record. There is no error by the ALJ in this regard.

Claimant also contends that the ALJ determined his subjective statements based upon his symptoms were "reasonably consistent" with the medical evidence and other evidence in the record, which included his statements that he could not stand more than 15 minutes or walk more than one block or 30 minutes. Defendant contends that the finding was a typographical error by the ALJ, resulting in harmless error, as it is clear from the rest of the ALJ's decision that he found Claimant's subjective statements inconsistent with the record evidence.

The ALJ discussed Claimant's testimony in the decision. (Tr. 22). As part of his analysis of Claimant's subjective symptoms, the ALJ referenced Claimant's use of over-the-counter medication for back pain, the fact that the nerve conduction studies could not be performed because "they could not get past my leg," physical examination findings for normal sensation in November of 2017, findings on multiple occasions that Claimant was noncompliant with medication and treatment recommendations, physical examination findings in 2018 from Dr. Landgarten, and physical examination findings from Claimant's consultative examination in April of

2017. The ALJ noted that other than Dr. Peters' opinion, Claimant's other physicians had not placed any functional restrictions on his activities that would preclude light work. He referenced that Claimant's daily activities were consistent with an RFC for light work. He concluded that although he did not discount all of Claimant's complaints, based on the objective medical evidence in the record, Claimant's RFC was "reasonable" and he could "function within those limitations without experiencing significant exacerbation of his symptoms." (Tr. 25).

Although the ALJ stated in the decision that Claimant's statements regarding his symptoms "are reasonably consistent with the medical evidence and other evidence in the record[,]" it is clear from the decision as a whole, that this was a scrivener's error by the ALJ. *See Ramsey v. Barnhart*, 117 Fed. Appx. 638, 641 (10th Cir. 2004) ("It is obvious from the text of this rule and from the ALJ's decision as a whole that the omission of the word 'not' in the ALJ's finding represents a typographical error, rather than a fatal ambiguity in the decision."). The ALJ specifically detailed in the decision why Claimant's subjective reports of symptoms were not consistent with the medical and other evidence. (Tr. 22-25). Reading the error in the context of the entire decision, it is clear the ALJ intended to find that Claimant's symptoms "are [not] reasonably consistent with the medical evidence and other evidence in the record[.]" The ALJ's evaluation

9

of Claimant's subjective symptoms is supported by substantial evidence. *See Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992) (dismissing the claimant's argument that there was evidence supporting his credibility as a request to reweigh the evidence).

Claimant finally argues that the ALJ erred by relying on his daily activities while ignoring the "specific facts behind the generalities" which indicated Claimant needed assistance performing such tasks or could perform them only intermittently. The ALJ discussed Claimant's performance of daily activities when summarizing his testimony, including that he had a stool in the kitchen and cooked for his wife when she came home from work. He went grocery shopping with his wife, had difficulty standing on one leg to get dressed, tried to use the push mower, cleaned the house, and would read. He also summarized Claimant's activities as reported on two function reports completed by Claimant (Tr. 24, 183-90, 218-26). He further discussed the third-party function report completed by Claimant's wife. (Tr. 24, 209-17).

The ALJ relied upon Claimant's daily activities as one factor supporting his conclusion that Claimant could perform light work. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (finding evidence of daily activities is relevant even if it does not, by itself, establish a claimant can engage in light or sedentary work activities). The ALJ also relied upon other factors when

determining Claimant's subjective statements did not support more restrictive functional limitations. (Tr. 25). There is no error in the ALJ's consideration of and reliance on Claimant's daily activities in his determination of whether Claimant's allegations of disabling symptoms are credible.

### Consideration of Medical Opinion Evidence

Claimant argues the ALJ failed to properly evaluate the medical opinion of Dr. Peters. Dr. Peters examined Claimant on three occasions from July of 2018 through September of 2018. In July of 2018, Dr. Peters examined Claimant for complaints associated with his diabetes and severe peripheral neuropathy of the arms, legs, hands, and feet. Claimant was noted to be positive for back pain and numbness, but his physical examination was normal. (Tr. 23, 429-36). At his examination in August of 2018, Claimant returned for a follow-up visit regarding his diabetes. He reported his nausea had resolved after he stopped taking Farxiga, and he told Dr. Peters that EMG studies confirmed Claimant had peripheral neuropathy. No abnormalities were noted by Dr. Peters during Claimant's physical examination. Claimant advised he was only taking Lyrica once per day. Dr. Peters advised Claimant to increase his usage of Lyrica to twice daily for better neuropathy control. (Tr. 23, 437-42). Claimant returned in September of 2018 regarding his diabetes with neuropathy and tinnitus of his left ear. Claimant reportedly ate only one meal per day. Again, he had

a normal examination.  (Tr. 23, 446-49).

On December 28, 2018, Dr. Peters completed a medical source statement for Claimant. He determined Claimant could stand and/or walk for less than thirty minutes and less than two-hours in an eight-hour workday, could sit between thirty minutes to one hour and at least four hours (but less than six hours) in an eight-hour workday. Claimant could occasionally and frequently lift and/or carry ten pounds. He assigned Claimant manipulative limitations, including only occasional reaching in all directions (including overhead) and handling and rarely fingering and feeling with both his right and left hands. Claimant required positional changes to relieve his symptoms because he developed pain and numbness of his legs in less than thirty minutes when sitting, but prolonged standing/walking caused him severe neuropathic pain. Dr. Peters concluded that with his limitations, Claimant would be unable to perform work on a sustained and continuing basis. Dr. Peters based his opinion on Claimant's known severe peripheral neuropathy and carpel tunnel syndrome. He noted nerve studies had confirmed hypoesthesia despite nerve pain blocking medications. He further determined Claimant's pain or medications would affect his ability to concentrate and that he could perform simple tasks only. (Tr. 23-24, 478-80).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal*

*v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ assigned "no weight" to Dr. Peters' opinion. He noted that Dr. Peters only saw Claimant on three occasions, the first time on July 9, 2018, and the last time in September of 2018. Claimant's physical examinations at all three visits "were unremarkable and there was no mention of carpel tunnel syndrome." Regarding the nerve conduction studies mentioned by Dr. Peters, the ALJ noted they were not in the file and Claimant testified the test was not actually performed because they "could not get past

13

[his] leg." The ALJ further noted that treating source opinions on issues reserved to the Commissioner were not entitled to controlling weight or special significance. The ALJ concluded that upon careful consideration of Dr. Peters' opinion, he could afford it "no weight" because it was "in conflict with Dr. Peters' own treatment records and inconsistent with the other substantial evidence as noted above." (Tr. 24).

The ALJ provided reasons in the decision for affording Dr. Peters' opinion no weight. Although Claimant contends the ALJ failed to fully consider his testimony regarding his nerve conduction studies and that the test could not be completed because of pain, the ALJ sufficiently referred to the testimony in the decision. Moreover, in addition to noting that Dr. Peters opined on an issue reserved to the Commissioner, the Claimant's RFC, the ALJ provided other reasons for disregarding the opinion. He provided examples of how the opinion was inconsistent with Dr. Peters' treatment records, referred to his prior recitation of the evidence in the record and that Dr. Peters' opinion was inconsistent with the other substantial evidence, and that Dr. Peters only examined Claimant on three occasions at which Claimant's physical examinations were unremarkable. (Tr. 23-24). There is no error in the ALJ's evaluation of Dr. Peters' opinion.

Claimant next argues the ALJ failed to account for certain limitations in the RFC from the state agency psychological

14

consultant, Dr. Rolison, even though he afforded her opinion "significant weight." Specifically, Claimant contends the ALJ did not include in the RFC the state agency psychologist's mental functional limitation that he could perform simple and some complex tasks "in a familiar work setting."

Dr. Rolison reviewed the evidence in August of 2017 and determined Claimant was moderately limited in his ability to understand and remember detailed instructions and in his ability to carry out detailed instructions. She noted Claimant did not have social interaction or adaptation limitations. In the additional explanation narrative, she explained Claimant could perform simple and some complex tasks in a familiar work setting and could relate to supervisors and peers on a superficial work basis, with limited public contact. Claimant could adapt to a work environment. (Tr. 81-82).

In the decision, the ALJ specifically discussed the functional narrative of Dr. Rolison, also noting her opinion was adopted by another state agency psychologist, Jane Buerger, Ph.D. (Tr. 25, 371-72). The ALJ assigned Dr. Rolison's and Dr. Buerger's opinions "significant" weight because they were well-supported by the "medically acceptable clinical or laboratory techniques and largely consistent with the record as a whole[.]" (Tr. 25-26).

Although the ALJ did not specifically include the portion of Dr. Rolison's statement regarding "a familiar work setting" in the

RFC or the hypothetical questions to the VE, the failure to do so by the ALJ was harmless. *See generally*, *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (applying harmless-error analysis when "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way."). Dr. Rolison determined Claimant did not have adaptation limitations and noted he could adapt to a work environment. She did not explain what "a familiar work setting" meant in the narrative. Her findings appear in conflict with one another.[2] Moreover, it is difficult to foresee how any job could be performed in "a familiar work setting" when the jobs provided by a VE in response to an ALJ's hypothetical questions are jobs that have never been performed by a claimant. Furthermore, the unpublished case cited by Claimant in support of his argument, *Russell v. Commissioner of the Social Security Admin.*, 2018 WL 4613641, at *3 (E.D. Okla., Sept. 26, 2018), is inapposite to the issue, as the *Russell* case involved a statement by a consulting psychologist that the claimant "likely did better in small, familiar social settings." There is no indication that Dr. Rolison's statement regarding "a familiar work setting" has

---

[2] This Court finds unpersuasive Defendant's argument that the ALJ's limitation to "repetitive" tasks accounted for a limitation for "a familiar work setting."

anything to do with the social limitations included in her narrative explanation, *i.e.*, relating to supervisors and peers on a superficial work basis with limited contact with the public. Thus, any error by the ALJ in this regard is deemed harmless.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 1st day of March, 2021.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE